# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,      )
                           )
          Plaintiff,       )
                           )
     v.                    )     Case No. 17-cv-832 (CKK)
                           )
U.S. DEPARTMENT OF JUSTICE,  )
                           )
         Defendant.     )
_____)

## MEMORANDUM IN SUPPORT OF THE
## U.S. DEPARTMENT OF JUSTICE'S MOTION FOR SUMMARY JUDGMENT

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

JAMES BICKFORD
Trial Attorney (NY. Bar No. 516498)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC  20024
Tel:    (202) 305-7632
Fax:    (202) 616-8470
Email: James.Bickford@usdoj.gov

*Counsel for Defendant*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 2

    A.    Summary Judgment in FOIA Cases.................................................................... 2

    B.    FOIA Exemption 5 ............................................................................................. 3

        i.    Deliberative Process Privilege ...................................................... 4

        ii.    Attorney Work Product Doctrine................................................... 5

ARGUMENT ...................................................................................................................... 6

    A.    Five drafts of official statements contemplated by Acting Attorney General Yates were properly withheld in full pursuant to the deliberative process privilege. ................................................................................................ 6

    B.    Nine email chains and one memorandum discussing pending litigation related to Executive Order 13,769 were properly withheld in full pursuant to the deliberative process privilege and attorney work product doctrine............. 7

    C.    Five other emails and email chains were properly withheld in full pursuant to the deliberative process privilege and attorney work product doctrine. ............. 8

    D.    One email listing attendees at a Department of Justice meeting was properly withheld in full pursuant to the deliberative process privilege. ............... 9

    E.    Portions of four intra-agency and/or inter-agency email chains discussing messages from plaintiffs' counsel in litigation related to Executive Order 13,769 were properly withheld pursuant to the deliberative process privilege and the attorney work product doctrine. ................................................... 9

    F.    Portions of six email chains in which Department of Justice officials discuss press inquiries and reports, and potential press statements related to Executive Order 13,769 were properly withheld under the deliberative process privilege. ......................................................................................... 10

    G.    Portions of four email chains discussing processes for intra-Departmental communication and decision-making were properly withheld under the deliberative process privilege. ........................................................................... 11

i

H.  Portions of four email chains discussing litigation and one email chain discussing preliminary sentencing data were properly withheld under the deliberative process privilege and/or the attorney work product doctrine............ 12

I.  The portions of a lengthy chart that discussed pending or anticipated litigation were properly withheld under the attorney work product doctrine and deliberative process privilege........................................................................ 13

CONCLUSION.................................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Brayton v. Office of the U.S. Trade Representative*,
   641 F.3d 521 (D.C. Cir. 2011) .......................................................................................... 2

*Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*,
   40 F.R.D. 318 (D.D.C. 1966) .......................................................................................... 4

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) .................................................................................. 5, 9, 11

*Competitive Enterprise Inst. v. EPA*,
   232 F. Supp. 3d. 172 (D.D.C. 2017) ............................................................................... 11

*Dean v. DOJ*,
   87 F. Supp. 3d 318 (D.D.C. 2015) .................................................................................... 2

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001). ........................................................................................................... 4

*Ellis v. U.S. Dep't of Justice*,
   110 F. Supp. 3d. 99 (D.D.C. 2015) ........................................................................... 7, 8, 13

*FBI v. Abramson*,
   456 U.S. 615 (1982) . ....................................................................................................... 3

*Feld v. Fireman's Fund Ins. Co.*,
   300 F.R.D. 9 (D.D.C. 2014). ...................................................................................... 7, 10

*Formaldehyde Inst. v. HHS*,
   889 F.2d 1118 (D.C. Cir. 1989) ....................................................................................... 5

*FTC v. Boehringer Ingelheim Pharm., Inc.*,
   778 F.3d 142 (D.C. Cir. 2015) ................................................................... 5, 7, 8, 10, 12, 13

*Heggestad v. U.S. Dep't of Justice*,
   182 F. Supp. 2d 1 (D.D.C. 2000) ..................................................................................... 5

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ..................................................................................................... 5, 7

*In re Apollo Group, Inc. Securities Litigation*,
   251 F.R.D. 12 (D.D.C. 2008) ...................................................................................... 6, 12

*In re Sealed Case*,
   146 F.3d 884 (D.C. Cir. 1998) .................................................................... 5, 7, 8, 10, 12, 13

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ................................................................................. 3

*Judicial Watch v. Clinton*,
   880 F. Supp. 1 (D.D.C. 1995) ................................................................... 6

*Judicial Watch v. Export-Import Bank*,
   108 F. Supp. 2d 19 (D.D.C. 2000) ............................................................ 5

*Judicial Watch v. FDA*,
   449 F.3d 141 (D.C. Cir. 2006) .................................................................. 4

*Judicial Watch v. U.S. Dep't of Homeland Security*,
   736 F. Supp. 2d 202, 208 (D.D.C. 2010) ................................................ 11

*Judicial Watch v. U.S. Dep't of Homeland Security*,
   880 F. Supp. 2d 105 (D.D.C. 2012) .................................................. 10, 11

*Judicial Watch v. U.S. Dep't of Justice*,
   432 F.3d 366 (D.C. Cir. 2005) ......................................................... 5, 7, 8

*Judicial Watch v. U.S. Dep't of State*,
   875 F. Supp. 2d 37 (D.D.C. 2012) ............................................................ 9

*Judicial Watch v. U.S. Dep't of Treasury*,
   796 F. Supp. 2d 13 (D.D.C. 2011) ..................................................... 10, 11

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) .................................................................. 3

*McKinley v. Bd. of Governors of the Fed. Reserve Sys.*,
   647 F.3d 331 (D.C. Cir. 2011) .................................................................. 5

*Nat'l Sec. Archive v. CIA*,
   752 F.3d 460, 463 (D.C. Cir. 2014) ................................ 4, 8, 9, 10, 11, 12, 13

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975). ............................................................................ 3, 4

*People for the American Way Foundation v. National Park Service*,
   503 F. Supp. 2d 284 (D.D.C. 2007) .......................................................... 6

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
   976 F.2d 1429 (D.C. Cir. 1992) ............................................................... 4

*Pub. Citizen, Inc. v. OMB*,
   598 F.3d 865 (D.C. Cir. 2010) ................................................................. 4

*Rockwell Int'l Corp. v. Dep't of Justice*,
　235 F.3d 598 (D.C. Cir. 2001) ................................................................. 4

*Wolf v. CIA*,
　473 F.3d 370 (D.C. Cir. 2007) ................................................................. 3

## STATUTES

5 U.S.C. § 552(a)(4)(B) ........................................................................... 2

5 U.S.C. § 552(b)(5) ........................................................................... 2, 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JUDICIAL WATCH, INC.,         )
                             )
        Plaintiff,        )
                             )
      v.                    )     Case No. 17-cv-832 (CKK)
                             )
U.S. DEPARTMENT OF JUSTICE,    )
                             )
        Defendant.    )
_____)

**MEMORANDUM IN SUPPORT OF THE**
**U.S. DEPARTMENT OF JUSTICE'S MOTION FOR SUMMARY JUDGMENT**

This case concerns a Freedom of Information Act request for emails sent or received by Sally Yates during her time as Acting Attorney General.  Judicial Watch challenges the withholding of unfinished drafts of statements contemplated by Acting Attorney General Yates, intra-agency emails written in anticipation of the litigation regarding Executive Order 13,679 and other Department of Justice litigation, internal deliberations over responses to pending and anticipated press inquiries, and other material that is similarly exempt from disclosure under FOIA Exemption 5.  It should be no surprise that the email account of the Acting Attorney General contains attorney work product created by Department of Justice attorneys and deliberations over courses of action that the Department might choose to take.  All of this material was properly withheld, as explained in the declaration of Vanessa Brinkmann and the associated tabular *Vaughn* index, and the Department of Justice is therefore entitled to summary judgment in its favor.

## BACKGROUND

On February 1, 2017, Judicial Watch submitted a FOIA request for emails sent from or received by "the Department of Justice e-mail account utilized by former Acting Attorney General Sally Yates" from January 21 through January 31, 2017.  Brinkmann Decl. ¶ 3.  The Department of Justice acknowledged receipt, *id.* ¶ 4; and Judicial Watch filed suit on May 5, 2017.

Judicial Watch agreed to exclude from the scope of its request certain news clippings sent to Acting Attorney General Yates by the Department of Justice's Office of Public Affairs, and querulous emails sent by one person to a long list of individuals in and out of government.  *Id.* ¶¶ 6–7.  The Department of Justice produced all other responsive, non-exempt records in two productions dated October 24 and November 24, 2017, as well as a supplemental production dated March 30, 2018.  *Id.* ¶¶ 9–11.

After negotiations between the parties, Judicial Watch informed the Department of Justice that it wished to challenge the validity of certain withholdings made pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5).  The Department of Justice now moves for summary judgment as to the validity of those withholdings.

## LEGAL STANDARD

### A.     Summary Judgment in FOIA Cases

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Dean v. DOJ*, 87 F. Supp. 3d 318, 320 (D.D.C. 2015) (citation omitted); *accord Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment.").  A court reviews an agency's response to a FOIA request *de novo*.  5 U.S.C. § 552(a)(4)(B).

FOIA represents a delicate balance "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).  In drafting the statute, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information," and therefore "provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  Although these exemptions are to be "narrowly construed," *id.* at 630 (citation omitted), courts must still give them "meaningful reach and application," *John Doe*, 493 U.S. at 152.

"An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit. . . ." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation omitted).  This is not a high bar: "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374–75 (citation omitted).

**B.      FOIA Exemption 5**

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption ensures that members of the public cannot obtain through FOIA what they could not ordinarily obtain through discovery in a lawsuit against the agency. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

### i.     Deliberative Process Privilege

Among the privileges protected by Exemption 5 is the deliberative process privilege, a privilege uniquely available to the government. *See Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001). The deliberative process privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears, Roebuck & Co.*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)). The "privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' . . . by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (citations omitted). "Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 151.

"To qualify for withholding under Exemption 5's executive privilege, information must be both 'predecisional' and 'deliberative.'" *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992); *see also Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014); *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 874 (D.C. Cir. 2010); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). A record "is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made," and it is "deliberative if it 'reflects the give-and-take of the consultative process.'" *Petroleum Info. Corp.*, 976 F.2d at 1434 (citations omitted).

"To establish that [a] document is predecisional, the agency need not point to an agency

final decision, but merely establish what deliberative process is involved, and the role that the

documents at issue played in that process." *Judicial Watch v. Export-Import Bank*, 108 F. Supp.

2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1223 (D.C. Cir.

1989)). The privilege therefore applies broadly to "recommendations, draft documents,

proposals, suggestions, and other subjective documents which reflect the personal opinions of the

writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617

F.2d 854, 866 (D.C. Cir. 1980).

ii.     **Attorney Work Product Doctrine**

Exemption 5 also incorporates the attorney work product doctrine. *McKinley v. Bd. of

Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 341 (D.C. Cir. 2011) (internal quotations and

citation omitted). This doctrine protects "mental impressions, conclusions, opinions, or legal

theories of a party's attorney," Fed. R. Civ. P. 26(b)(3)(B), and "factual materials prepared in

anticipation of litigation," *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 8 (D.D.C.

2000).  The attorney work product doctrine protects documents and other memoranda prepared

by an attorney in anticipation of litigation. *See FTC v. Boehringer Ingelheim Pharm., Inc.*, 778

F.3d 142, 149 (D.C. Cir. 2015); *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947) (explaining

that attorney work product can be "reflected . . . in interviews, statements, memoranda,

correspondence, briefs . . . and countless other tangible and intangible ways"). The attorney work

product doctrine analysis requires the Court to consider "whether, in light of the nature of the

document and the factual situation in the particular case, the document can fairly be said to have

been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d

881, 884 (D.C. Cir. 1998) (internal quotation and citation omitted).  "If a document is fully

protected as work product, then segregability is not required" under FOIA. *Judicial Watch, Inc.*

*v. U.S. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005).

## ARGUMENT

**A.     Five drafts of official statements contemplated by Acting Attorney General Yates were properly withheld in full pursuant to the deliberative process privilege.**

Documents 5153-1, 5156-1, 5164-1, and 5182-1 are working drafts of the memorandum issued by Acting Attorney General Yates on January 30, 2017, instructing Department of Justice officials not to defend the validity of Executive Order 13,769.  Brinkmann Decl. ¶ 12.a. Document 5303-1 is a working draft of a statement that was never issued by Acting Attorney General Yates.  *Id.*

All five documents were properly withheld in full pursuant to the deliberative process privilege.  "[D]raft documents by their very nature, are typically predecisional and deliberative, because they reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors." *In re Apollo Group, Inc. Securities Litigation*, 251 F.R.D. 12, 31 (D.D.C. 2008) (quotations omitted). Accordingly, "drafts are commonly found exempt under the deliberative process exemption." *People for the American Way Foundation v. National Park Service*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007); *see also Judicial Watch v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995) (upholding nondisclosure of draft responses to a congressional inquiry).

Because all five of these documents reflect the deliberations by Department of Justice officials including the Acting Attorney General as to what statements Acting Attorney General Yates should make in the future, they are protected by the deliberative process privilege. Moreover, these documents are entirely deliberative, and do not contain any segregable, non-exempt information.

**B.      Nine email chains and one memorandum discussing pending litigation related to Executive Order 13,769 were properly withheld in full pursuant to the deliberative process privilege and attorney work product doctrine.**

Documents 5190, 5213, 5217, 5221, 5242, 5243, 5245, 5268, and 5269 are intra-agency email chains in which Department of Justice officials discuss and analyze developments in litigation related to Executive Order 13,679.  Brinkmann Decl. ¶ 12.b.  Document 5190-1 is an intra-agency memorandum discussing and analyzing such developments.  *Id.*  All were properly withheld in full under both the deliberative process privilege and the attorney work product doctrine.

All of these documents were prepared because of the prospect (indeed, the fact) of litigation related to Executive Order 13,679, and are therefore protected by the attorney work product doctrine.  *See Boehringer*, 778 F.3d at 149; *In re Sealed Case*, 146 F.3d at 884. Communications between Department of Justice officials as to developments in pending litigation and the government's strategy in such cases "are classic attorney work product, the disclosure of which would risk putting DOJ's lawyers' thought processes and strategy on public display."  *Ellis v. U.S. Dep't of Justice*, 110 F. Supp. 3d 99, 109 (D.D.C. 2015).  Such emails are "the equivalent of a strategy meeting . . . but taking place via email chain rather than around a conference room table."  *Feld v. Fireman's Fund Ins. Co.*, 300 F.R.D. 9, 14 (D.D.C. 2014); *see Hickman*, 329 U.S. at 511 (1947) (noting that "correspondence" is a form of attorney work product).  They, and similar memoranda, are therefore protected by the attorney work product doctrine, and not subject to segregability analysis.  *See Judicial Watch*, 432 F.3d at 367, 371 (because emails involving "communications between Department of Justice . . . officials, containing discussions about whether DOJ should file an amicus brief in [a particular case] and what the Department's position should be if such a brief were filed" were "fully protected as

work product," segregability was "not required").

These email chains and this memorandum are also protected by the deliberative process privilege, because they contain the pre-decisional deliberations of Department of Justice attorneys as to courses of action to be taken in pending litigation. *See Nat'l Sec. Archive*, 752 F.3d at 463 (explaining that "the term 'deliberative' does not add a great deal of substance to the term 'pre-decisional,'" and that "[t]he term 'deliberative' in this context means, in essence, that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue").

    C.    **Five other emails and email chains were properly withheld in full pursuant to the deliberative process privilege and attorney work product doctrine.**

Document 5189 is a brief, forwarded email containing legal advice about the interpretation of Executive Order 13,679, sent in anticipation of pending litigation. Brinkmann Decl. ¶ 12.c. Document 5596 is an intra-agency email chain discussing and analyzing developments in a case to which the Department of Justice was a party. *Id.* Document 5697 is an intra-agency email chain discussing anticipated litigation. *Id.* Document 5712 is a brief intra-agency memorandum sent via email, discussing and analyzing developments in a case to which the Department of Justice was a party. *Id.* Document 5853 is a brief intra-agency memorandum sent via email, describing arrests that were expected to lead to prosecutions by the Department of Justice. *Id.* All five of these documents are protected by the attorney work product doctrine, because they were prepared by Department of Justice attorneys in anticipation of ongoing civil litigation, in the first four cases, and in anticipation of criminal prosecution, in the fifth. *See Boehringer*, 778 F.3d at 149; *Judicial Watch*, 432 F.3d at 367, 371; *In re Sealed Case*, 146 F.3d at 884; *Ellis*, 110 F. Supp. 3d. at 109. All five documents were also properly withheld pursuant to the deliberative process privilege, because they contain the pre-decisional deliberations

- 8 -

(including tentative legal views) of Department of Justice attorneys as to courses of action to be taken in pending or anticipated litigation. *See Nat'l Sec. Archive*, 752 F.3d at 463.

**D.  One email listing attendees at a Department of Justice meeting was properly withheld in full pursuant to the deliberative process privilege.**

Document 6792 is an email listing attendees at a Department of Justice meeting. Brinkmann Decl. ¶ 12.d.  It is withheld in full under the deliberative process privilege, as its release would be very likely to reveal the subject matter of this deliberative meeting. *See Coastal States*, 617 F.2d at 866 (discussing the breadth of the deliberative process privilege); *see also Judicial Watch, Inc. v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 44–46 (D.D.C. 2012) (protecting emails discussing which agency employees to invite to meeting because "the presence or absence of a name conveys an agency's or employee's opinion about a potential attendee's value to the meeting" and stating that "[d]isclosure of potential invitees would also have a chilling effect on . . . interagency discussions").  It does not contain any segregable, non-exempt information.  Brinkmann Decl. ¶ 12.d.

**E.  Portions of four intra-agency and/or inter-agency email chains discussing messages from plaintiffs' counsel in litigation related to Executive Order 13,769 were properly withheld pursuant to the deliberative process privilege and the attorney work product doctrine.**

Documents 5219 and 5253 are email chains beginning with the same three emails from plaintiffs' counsel in *Darweesh v. Trump*, No. 1:17-cv-480 (E.D.N.Y.).  Brinkmann Decl. ¶ 12.e. The remainder of those email chains, in which Department of Justice officials discuss that pending litigation, was withheld pursuant to the deliberative process privilege and attorney work product doctrine.  *Id.*  Documents 5251 and 5251-5 are email chains beginning with emails involving plaintiffs' counsel in *Aziz v. Trump*, No. 1:17-cv-116 (E.D. Va.).  Brinkmann Decl. ¶ 12.e.  The remainder of those email chains, in which officials from the Department of Justice

discuss that pending litigation, was also withheld pursuant to the deliberative process privilege and attorney work product doctrine. *Id.*

These partial withholdings are appropriate for the same reason as the full withholdings of email chains discussing pending litigation about Executive Order 13,769, which are described in Section B above. In brief, all of this correspondence between Department of Justice attorneys was prepared because of the litigation related to Executive Order 13,679, and is therefore protected by the attorney work product doctrine. *See Boehringer*, 778 F.3d at 149; *In re Sealed Case*, 146 F.3d at 884. The withheld portions of these emails are "the equivalent of a strategy meeting . . . but taking place via email chain rather than around a conference room table." *Feld*, 300 F.R.D. at 14. This material is also properly withheld under the deliberative process privilege, because it consists of the pre-decisional deliberations of Department of Justice attorneys as to courses of action to be taken in pending or anticipated litigation. *See Nat'l Sec. Archive*, 752 F.3d at 463.

F.      **Portions of six email chains in which Department of Justice officials discuss press inquiries and reports, and potential press statements related to Executive Order 13,769 were properly withheld under the deliberative process privilege.**

Documents 5203, 5204, 5205, 5212, 5244, and 5257 are email chains containing intra-agency discussions of press inquiries and reports related to Executive Order 13,769, and potential press statements to be issued in response. Brinkmann Decl. ¶ 12.f. These discussions were properly withheld pursuant to the deliberative process privilege.

"In this District, . . . courts have routinely found that drafts and discussions relating to how to respond to press inquiries are covered by the deliberative process privilege." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 880 F. Supp. 2d 105, 111–12 (D.D.C. 2012) (citing *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011), and

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010)). In particular, "[e]mails 'generated as part of a continuous process of agency decision-making regarding how to respond to' a press inquiry are protected by the deliberative process privilege." *Competitive Enterprise Inst. v. EPA*, 232 F. Supp. 3d. 172, 188 (D.D.C. 2017) (quoting *Judicial Watch*, 796 F. Supp. 2d at 31). Because the material withheld from these email chains, "including drafts and communications relating to press inquiries," is "predecisional to the agency's determination of how to present its policy in the press," and because "the fear of public scrutiny may affect an agency's consideration of whether to provide a statement . . . just as it may affect consideration of the underlying substantive policy," *Judicial Watch*, 880 F. Supp. 2d at 112, this material was properly withheld under the deliberative process privilege. All segregable, non-exempt information was released. Brinkmann Decl. ¶ 12.f.

G.   **Portions of four email chains discussing processes for intra-Departmental communication and decision-making were properly withheld under the deliberative process privilege.**

Documents 5207, 5214, 5267, and 5845 contain discussions between Department of Justice officials about Departmental processes for communications and decision-making, including who should be involved in and notified of particular Departmental decisions. Brinkmann Decl. ¶ 12.g. These discussions are properly withheld pursuant to the deliberative process privilege, because they were "intended to facilitate or assist development of the agency's final position on" the use of and adherence to certain communication and decision-making protocols. *See Nat'l Sec. Archive*, 752 F.3d at 463. Moreover, the withheld deliberations are sufficiently "candid . . . in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States*, 617 F.2d at 866. All segregable, non-exempt information was released. Brinkmann Decl. ¶ 12.g.

**H.** **Portions of four email chains discussing litigation and one email chain discussing preliminary sentencing data were properly withheld under the deliberative process privilege and/or the attorney work product doctrine.**

Documents 5246, 5415, and 5581 contain intra-agency discussions of developments in pending or anticipated litigation.  Brinkmann Decl. ¶ 12.h.  These discussions were properly withheld pursuant to both the attorney work product doctrine and the deliberative process privilege, for the reasons described in Sections B and E.  Briefly, this correspondence between Department of Justice attorneys was prepared because of the pending or anticipated litigation it discusses, and is therefore protected by the attorney work product doctrine.  *See Boehringer*, 778 F.3d at 149; *In re Sealed Case*, 146 F.3d at 884.  This material is also properly withheld under the deliberative process privilege, because it consists of the pre-decisional deliberations of Department of Justice attorneys as to courses of action to be taken in that pending or anticipated litigation.  *See Nat'l Sec. Archive*, 752 F.3d at 463.

Document 5475 describes and attaches a recent decision from the Foreign Intelligence Surveillance Court.  Brinkmann Decl. ¶ 12.h.  The description is deliberative material, as it provides the author's views of the decision and its consequences.  *Id.*  Document 5846 contains a discussion of preliminary sentencing data, which was properly withheld pursuant under the deliberative process privilege.  *Id.*  This preliminary data and the associated discussion is effectively a draft study, and "draft documents by their very nature, are typically predecisional and deliberative, because they reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors." *In re Apollo Group*, 251 F.R.D. at 31.

I.     **The portions of a lengthy chart that discussed pending or anticipated litigation were properly withheld under the attorney work product doctrine and deliberative process privilege.**

Document 5276-1 is a thirty-page chart entitled "Sensitive or High-Profile Matters Within Next Two Weeks."  Brinkmann Decl. ¶ 12.i.  It contains many summaries of recent or expected developments in litigation to which the Department of Justice was a party, prepared so that Department of Justice officials could supervise and direct that litigation.  *Id.*  These summaries were properly withheld pursuant to the attorney work product doctrine and deliberative process privilege.  Summaries of non-litigation matters were segregated and released.

These withheld summaries were prepared by Department of Justice attorneys because of the litigation they discuss (whether pending or anticipated) and are therefore protected by the attorney work product doctrine.  *See Boehringer*, 778 F.3d at 149; *In re Sealed Case*, 146 F.3d at 884.  Communications between Department of Justice officials as to developments in pending litigation and the government's strategy in such cases "are classic attorney work product, the disclosure of which would risk putting DOJ's lawyers' thought processes and strategy on public display."  *Ellis*, 110 F. Supp. 3d. at 109.  Some of this material is also withheld pursuant to the deliberative process privilege, because it was "intended to facilitate or assist development of the agency's final position on" various strategic decisions regarding pending litigation.  *See Nat'l Sec. Archive*, 752 F.3d at 463.

## CONCLUSION

For the reasons set forth above, and in the declaration of Vanessa Brinkmann and its associated tabular *Vaughn* index, the Department of Justice is entitled to summary judgment on the withholdings challenged here.

- 13 -

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*James Bickford*
JAMES BICKFORD
Trial Attorney (NY. Bar No. 516498)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC  20024
Tel:    (202) 305-7632
Fax:    (202) 616-8470
Email: James.Bickford@usdoj.gov

Dated:  August 23, 2018                    *Counsel for Defendant*