**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-cv-832 (CKK) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## DECLARATION OF VANESSA R.  BRINKMANN

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1.      I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice (DOJ or Department).  In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests processed by OIP attorneys.  The Initial Request (IR) Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from six senior leadership offices of the Department of Justice, specifically: the Offices of the Attorney General (OAG), the Deputy Attorney General (ODAG), and the Associate Attorney General (OASG), and the Offices of Legislative Affairs (OLA), Legal Policy (OLP), and Public Affairs (PAO).  The IR Staff determines whether records responsive to access requests exist and, if so, whether they can be released in accordance with the FOIA.  In processing such requests, the IR Staff consult with personnel in the senior leadership offices and, when appropriate, with other components within the DOJ, as well as with other Executive Branch agencies.

2.      I make the statements herein based on my personal knowledge, as well as on information

that I acquired while performing my official duties.

**Plaintiff's FOIA Request**

3.      By letter dated February 1, 2017, Plaintiff submitted a FOIA request to DOJ seeking e-

mails sent from or received by "the Department of Justice e-mail account utilized by former

Acting Attorney General Sally Yates."  Plaintiff limited its request to e-mails sent or received

between January 21, 2017 and January 31, 2017.  OIP received this FOIA request on February 1,

2017.  A copy of plaintiff's FOIA request is attached hereto as Exhibit A.

4.      By letter dated March 2, 2017, OIP acknowledged receipt of plaintiff's FOIA request on

behalf of the Office of the Attorney General (OAG), and assigned it administrative tracking

number DOJ-2017-002048 (AG).  A copy of OIP's acknowledgement letter to plaintiff dated

March 2, 2017, is attached as Exhibit B.

5.      On May 5, 2017, plaintiff filed this suit.

6.      On July 14, 2017, plaintiff agreed to exclude certain news clippings sent by the Public

Information Office from the scope of its request.

7.      On October 2, 2017, plaintiff agreed to exclude from the scope of its request e-mails sent

by one person to a long list of individuals in and out of government, including Acting Attorney

General Yates and a number of people with e-mail addresses at "arbys.com."

**Responses to Plaintiff's FOIA Request**

8.      By letter dated September 15, 2017, OIP provided an interim response to plaintiff's FOIA

request.  OIP informed plaintiff that searches had been conducted for former Acting Attorney

General Sally Yates' e-mails from January 21, 2017 through January 31, 2017. OIP informed

plaintiff that records responsive to plaintiff's request had been located, and that they were being

reviewed. OIP further informed plaintiff that OIP was withholding twenty-eight pages in full

pursuant to Exemption 6 of the FOIA 5 U.S.C. § 552(b)(6). A copy of OIP's interim response,

dated September 15, 2017, is attached as Exhibit C.

9. By letter dated October 24, 2017, OIP provided its second interim response to plaintiff's

FOIA request. OIP informed plaintiff that it had completed processing an additional 333 pages

of records responsive to plaintiff's request, and that OIP was continuing to process an additional

110 pages of responsive records. Pursuant to this response, OIP provided 333 pages of material,

some with certain excisions made pursuant to Exemptions 5 and 6 of the FOIA, 5 U.S.C.

§ 552(b)(5) and (b)(6), and pursuant to Exemptions 7(C) and 7(E), 5 U.S.C. § 552(b)(7)(C) and

(b)(7)(E), on behalf of the Federal Bureau of Investigation. A copy of OIP's second interim

response letter to plaintiff, dated October 24, 2017, is attached as Exhibit D.

10. By letter dated November 24, 2017, OIP provided its final response to plaintiff's FOIA

request. Pursuant to this response, OIP provided forty-two pages of material to plaintiff, some

with certain excisions made pursuant to Exemptions 5 and 6 of the FOIA. 5 U.S.C. § 552(b)(5)

and (b)(6). Furthermore, OIP withheld sixty-eight pages in full pursuant to Exemptions 5 and 6

of the FOIA. 5 U.S.C. § 552(b)(5) and (b)(6). A copy of OIP's final response letter to plaintiff,

dated November 24, 2017, is attached as Exhibit E.

11. By letter dated March 30, 2018, OIP provided a supplemental final response to plaintiff's

FOIA request. OIP informed plaintiff that, as a matter of administrative discretion, OIP decided

to release additional information on a one-page document that OIP originally released in part in

the October 24, 2017 interim release.  OIP also decided to release in full a second document OIP

withheld in full in the October 24, 2017 interim release.  A copy of OIP's supplemental final

response letter to plaintiff, dated March 30, 2018, is attached as Exhibit F.

### Explanation of Challenged Withholdings

12.     On April 26, 2018, plaintiff identified the following withholdings to challenge:

   a.   Documents 5153-1, 5156-1, 5164-1, and 5182-1 are working drafts of the

        memorandum issued by Acting Attorney General Yates on January 30, 2017,

        instructing Department of Justice officials not to defend the validity of Executive

        Order 13,769.  Document 5303-1 is a working draft of a statement that was never

        issued by Acting Attorney General Yates.  These documents are withheld in full

        pursuant to the deliberative process privilege; they do not contain any segregable,

        non-exempt information.

   b.   Documents 5190, 5213, 5217, 5221, 5242, 5243, 5245, 5268, and 5269 are intra-

        agency email chains in which Department of Justice officials discuss and analyze

        developments in litigation related to Executive Order 13,679.  Document 5190-1

        is an intra-agency memorandum attached to one such email, discussing and

        analyzing such developments.  These documents are withheld in full pursuant to

        the attorney work-product doctrine and the deliberative process privilege; they do

        not contain any segregable, non-exempt information.

   c.   Document 5189 is a brief, forwarded email containing legal advice about the

        interpretation of Executive Order 13,679, sent in anticipation of pending

        litigation.  Document 5596 is an intra-agency email chain discussing and

        analyzing developments in a case to which the Department of Justice was a party.

Document 5697 is an intra-agency email chain discussing anticipated litigation. Document 5712 is a brief intra-agency memorandum sent via email, discussing and analyzing developments in a case to which the Department of Justice was a party.  Document 5853 is a brief intra-agency memorandum sent via email, describing arrests that were expected to lead to prosecutions by the Department of Justice.  These documents are withheld in full pursuant to the attorney work-product doctrine and the deliberative process privilege; they do not contain any segregable, non-exempt information.

d.   Document 6792 is an email listing attendees at a Department of Justice meeting. It is withheld in full under the deliberative process privilege, as its release would be very likely to reveal the protected subject matter of this deliberative meeting. It does not contain any segregable, non-exempt information.

e.   Documents 5219 and 5253 are email chains beginning with the same three emails from plaintiffs' counsel in *Darweesh v. Trump*, No. 1:17-cv-480 (E.D.N.Y.).  The remainder of those email chains, in which Department of Justice officials discuss that pending litigation, are withheld pursuant to the attorney work-product doctrine and the deliberative process privilege; they do not contain any additional segregable, non-exempt information.  Documents 5251 and 5251-5 are email chains beginning with emails involving plaintiffs' counsel in *Aziz v. Trump*, No. 1:17-cv-116 (E.D. Va.).  The remainder of those email chains, in which officials from the Department of Justice discuss that pending litigation, are withheld pursuant to the attorney work-product doctrine and the deliberative process privilege; they do not contain any additional segregable, non-exempt information.

f.  Documents 5203, 5204, 5205, 5212, 5244, and 5257 are email chains containing intra-agency discussions of press inquiries and reports related to Executive Order 13,769, and potential press statements to be issued in response.  These discussions were properly withheld pursuant to the deliberative process privilege; all segregable, non-exempt information was released.

g.  Documents 5207, 5214, 5267, and 5845 contain discussions between Department of Justice officials about Departmental processes for communications and decision-making, including who should be involved in and notified of particular Departmental decisions.  These discussions were withheld pursuant to the deliberative process privilege; all segregable, non-exempt information was released.

h.  Documents 5246, 5415, and 5581 contain intra-agency discussions of developments in pending or anticipated litigation.  These discussions were withheld pursuant to both the attorney work-product doctrine and the deliberative process privilege.  Document 5475 describes and attaches a recent decision from the Foreign Intelligence Surveillance Court.  The description is deliberative material, as it provides the author's views of the decision and its consequences. Document 5846 contains a discussion of preliminary sentencing data, which was also withheld pursuant under the deliberative process privilege.  These emails do not contain any additional segregable, non-exempt information.

i.  Document 5276-1 is a thirty-page chart entitled "Sensitive or High-Profile Matters within Next Two Weeks."  It contains many summaries of recent or expected developments in litigation to which the Department of Justice was a

party, prepared so that Department of Justice officials could supervise and direct

that litigation.  These summaries were withheld pursuant to the attorney work-

product doctrine and the deliberative process privilege.  They do not contain any

additional segregable, non-exempt information.

13.     This declaration is intended to be read in tandem with the tabular *Vaughn* index attached

as Exhibit G, which describes the challenged withholdings.  The tabular *Vaughn* index contains

descriptions of records withheld in full and records withheld in part.

## Exemption 5

14.     Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-

agency memorandums or letters which would not be available by law to a party other than an

agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  As discussed in detail below, all of

the information withheld by OIP pursuant to FOIA Exemption 5 is protected in full or in part

pursuant to the deliberative process privilege and/or the attorney work-product doctrine.

## Exemption 5:  Inter-/Intra-Agency Threshold

15.     Inter- and/or intra-agency records may be withheld from release pursuant to Exemption 5

of the FOIA.  The information withheld from plaintiff pursuant to Exemption 5 consists of

communications generated by the Department of Justice that remained internal to the Executive

Branch.  As such, they are "inter-/intra-agency" records within the threshold of FOIA Exemption

5.

## Exemption 5:  Deliberative Process Privilege

16.     The deliberative process privilege is intended to protect the decision-making processes of

government agencies from public scrutiny in order to enhance the quality of agency decisions.

To be protected by the deliberative process privilege, the information at issue must be both "pre-

decisional" and "deliberative." If pre-decisional, deliberative communications are routinely released to the public, Department employees will be much more cautious in their discussions with each other and in providing all pertinent information and viewpoints to agency or other Executive Branch decision-makers in a timely manner. This lack of candor will seriously impair the Department's ability to foster the forthright, internal discussions necessary for efficient and proper Executive Branch decision-making.

*Withheld in Full: E-mails and Attachments Discussing*
*Potential Actions for Specific, Ongoing, and Anticipated Cases*

17.     Inter- and intra-agency e-mails and Word documents, such as those withheld in this case by OIP, frequently include preliminary assessments by attorneys and other staff about issues on which they have been asked to make recommendations, develop provisional guidance, and give advice. Department officials routinely e-mail each other as they develop provisional guidance on how to respond to inquiries or statements regarding the Department's activities. Department staff also use e-mails and Word documents to brief senior officials on a variety of pending matters. In all of these instances, the e-mail exchanges and Word documents protected (in part or in full) by OIP pursuant to the deliberative process privilege reflect this preliminary give-and-take of agency deliberations.

18.     The deliberative process privilege is intended to protect the decision-making processes of government agencies from public scrutiny in order to enhance the quality of agency decisions. Disclosure of the e-mails and Word documents attached to the e-mails at issue would severely hamper the efficient day-to-day workings of the Department as individuals would no longer feel free to discuss their ideas, strategies, and advice in e-mail messages and Department employees would be much more circumspect in their discussions with each other. Certainly, disclosure of such preliminary assessments and opinions would make officials contributing to pre-decisional

deliberations much more cautious in providing their views out of a concern their views may at some point be made publicly available.

19.     Records in OIP's *Vaughn* Index categorized as "*E-mails and Attachments Discussing Potential Actions for Specific, Ongoing, and Anticipated Cases*" are e-mails (sometimes with attachments) among DOJ attorneys at various DOJ components, and e-mails from DOJ attorneys to other Executive agencies.  They are all either inter-agency or intra-agency communications. These e-mails and attachments include attorney notes, opinions, and recommendations for actions in specific, ongoing, or anticipated cases.  In the e-mails, DOJ attorneys are expressing opinions regarding proposed actions in various cases.  The e-mails are pre-decisional because they predate the final decisions.  The e-mails are deliberative because they include attorneys' recommendations and opinions on how to proceed.  Revealing such opinions would hinder the ability of agency staff to provide candid evaluations and recommendations.

20.     Records in OIP's *Vaughn* Index categorized as "*Draft Memoranda*" are working drafts of a final memorandum stating Department policy[1] and drafts of internal litigation guidance to United States Attorneys.  These drafts include multiple revisions made by Department staff.

21.     The drafts that were withheld in full are pre-decisional because they precede the finalization and transmission of the memorandum to United States Attorneys and/or the public. These drafts are also deliberative inasmuch as they reflect successive versions of working drafts and as such, show the internal development of the Department's and officials' decisions.  These drafts remained internal to the Department of Justice.  Disclosure of these drafts would undermine the ability of Department staff to freely engage in the candid "give and take" and

---

[1] The final version of this memorandum was produced to plaintiff in OIP's second interim production on October 24, 2017.

forthright collaboration which is critical to the eventual development of well-reasoned and accurate final documents.  Department deliberations on these working drafts cannot be effectively or reasonably segregated, because it is the content and evolution of the drafts themselves which reveal the authors' deliberative process.  Accordingly, they are protected in full pursuant to the deliberative process privilege.  To the extent that non-exempt, final versions of these drafts were identified, i.e. in the case of the draft memorandum stating final Department policy, they have been provided to plaintiff.

*Withheld in Part: E-mails Containing Proposed Press Guidance or Draft Press Statement*; *E-mails Discussing Actions for Specific, Ongoing, or Anticipated Cases and Matters*; *E-mails Discussing Internal Department Matters; E-mails Discussing Official Opinions about the Impact of Recent Opinions, Executive Orders, or Data*

22.     Records in OIP's *Vaughn* Index categorized as the following were released to plaintiff in part:

- *E-mails Containing Proposed Press Guidance or Draft Press Statement* consist of internal deliberations, recommendations, and proposals for how to address inquiries regarding Executive Order 13,769 ("the EO"), proposed press guidance to Executive Branch officials for use in addressing inquiries regarding the EO, and a draft press statement to DOJ officials for use in addressing inquiries regarding the EO;

- *E-mails Discussing Actions for Specific, Ongoing, or Anticipated Cases and Matters* consist of internal deliberations between Department of Justice officials addressing a pending matter, and internal discussion regarding how to respond to inquiries about civil rights litigation;

- *E-mails Discussing Internal Department Matters* consist of internal deliberations addressing the handling of sensitive personnel issues, and internal discussions about internal departmental processes and procedures; and

- *E-mails Discussing Official Opinions about the Impact of Recent Opinions, the EO, or Data* consist of internal discussion between DOJ officials specifically addressing Foreign Intelligence Surveillance Court opinions, internal DOJ deliberations addressing an Executive Order, and internal discussion reflecting the opinion of Executive Branch officials regarding preliminary sentencing data.

23.    The e-mails in the above-listed categories are internal discussions among Department staff.  The protected portions of these e-mails reflect deliberations regarding media inquiries, proposed agency actions, and ideas and recommendations of Department officials.

24.    All of these e-mails are pre-decisional because they are antecedent to the finalization of Departmental policy on issues where no final determination has been finalized or formalized. Further, some of the e-mails and attachments contain successive versions of documents and show the internal development of the Department's decisions.  They are deliberative because they contain evaluative discussion and preliminary assessments by attorneys and other staff regarding drafts and other matters in which they analyze, make recommendations, give advice, and work toward formulating strategies for final agency action and response.  Department officials routinely e-mail each other as they engage in such discussions and develop preliminary assessments about matters on which no final agency decision has been made.  All of the e-mails protected in part by OIP pursuant to the deliberative process privilege reflect this preliminary give-and-take of agency deliberations.

25.     Disclosure of the e-mails and attachments at issue would severely hamper the efficient day-to-day workings of the Department as individuals would no longer feel free to discuss their ideas, strategies, and advice in e-mail messages, and Department employees would be much more circumspect in their discussions with each other and with other Executive Branch officials. This lack of candor would seriously impair the Department's ability to foster the forthright internal discussions necessary for efficient and proper decision-making.  Certainly, disclosure of such preliminary assessments and opinions would make officials contributing to pre-decisional deliberations much more cautious in providing their views.  Agency decision-making is at its best when employees are able to focus on the substance of their views and not on whether their views may at some point be made publicly available.  All reasonably segregable, non-exempt information was released from within these e-mails and attachments, and only the portions protected by the deliberative process privilege were withheld from plaintiff.

*Segregation of Non-Exempt Information*

26.     OIP carefully reviewed each of the records discussed above, and withheld from release pursuant to the deliberative process privilege of Exemption 5 only that information that would reveal the Department's pre-decisional decision-making process.  OIP conducted a line-by-line review of these records and determined that some non-exempt, factual information within them could be segregated for release.  OIP only applied the deliberative process privilege to information consisting of pre-decisional, deliberative notes and communications made by attorneys in the course of formulating department policy and drafting guidance and statements. All reasonably segregable, nonexempt information from these records has been disclosed to plaintiff.

<u>Exemption 5:  Attorney Work-Product</u>

27.     The attorney work-product doctrine encompassed by Exemption 5 of the FOIA shields

materials prepared by an attorney or at the direction of an attorney, generated in reasonable

anticipation of litigation.  5 U.S.C. § 552(b)(5).  The doctrine protects any part of a document

prepared in anticipation of litigation, not just the portions concerning opinions and legal theories.

The purpose of this doctrine is to protect the adversarial process by insulating from scrutiny

materials created by attorneys in reasonable anticipation of litigation.

28.     As an initial matter, all of the information protected pursuant to the attorney work-

product doctrine was created by DOJ attorneys.  DOJ attorneys are singularly tasked with

enforcing federal laws and defending the interests of the United States, a critical responsibility

that extends to Department attorneys' consideration of potential actions to take in ongoing or

reasonably anticipated litigation.  Essential to this unique and fundamental role is the internal

process that unfolds within the Department, as Department prosecutors engage in careful, frank

analysis of the law.  The attorney work-product doctrine of Exemption 5 protects the entirety of

the e-mails and attachments withheld in full because they are discussions relating to proposed

Departmental actions created in reasonable anticipation of litigation.  Additionally, the e-mails

include the opinions and recommendations of attorneys regarding case strategy.

29.     The attorney work-product doctrine of Exemption 5 also protects information included in

Department e-mails that OIP withheld in part.  The documents here contain e-mails among DOJ

attorneys at various DOJ components and e-mails from DOJ attorneys to other agencies.  All are

either inter-agency or intra-agency communications.  These e-mails and attachments include

attorney notes, opinions, and recommendations for actions in specific, ongoing, or anticipated

cases.  In the e-mails, department officials discuss potential strategies for responding to recent

court orders, motions, and anticipated litigation.  Disclosure of the information reasonably could be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when Department officials have internal discussions expressing opinions on pending or anticipated cases.

*Segregation of Non-Exempt Information*

30.     OIP carefully reviewed the portions of the records in the production which were withheld pursuant to the attorney work-product doctrine and determined that none of this material could be further segregated for release.  The disclosure of these legal notations, opinions, and recommendations, and the facts selected for and contained within them would undermine the core legal strategy and analysis that the privilege is meant to protect by revealing Department attorneys' assessments of what was deemed significant in the course of formulating Department strategy.  The records withheld in part from plaintiff have been segregated to the extent that some portions of these records did not relate to the attorneys' work-product regarding ongoing or anticipated litigation but were appropriate for segregation and redaction under the deliberative process privilege.  The remainder of these records is covered by the attorney work-product doctrine and, accordingly, is not appropriate for segregation.

I declare under penalty of perjury that the foregoing is true and correct.

Vanessa R.  Brinkmann

Executed this 23rd day of August 2018.

14