# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br>Plaintiff,<br>v.<br>U.S. DEPARTMENT OF JUSTICE,<br>Defendant. | Civil Action No. 17-0832 (CKK) |

# MEMORANDUM OPINION
(September 24, 2019)

This lawsuit arises from a Freedom of Information Act ("FOIA") request that Plaintiff Judicial Watch, Inc. made to Defendant United States Department of Justice ("DOJ") in 2017. Judicial Watch requested emails sent from or received by Acting Attorney General Sally Yates from January 21, 2017 through January 31, 2017. After Judicial Watch subsequently filed suit, DOJ produced all responsive and non-exempt records. Pending before the Court are DOJ's Motion for Summary Judgment, ECF No. 18, and Judicial Watch's Cross-Motion for Summary Judgment, ECF No. 21.

DOJ argues that its withholdings are appropriate under FOIA Exemption 5, which protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Judicial Watch contends both that Exemption 5 does not apply to certain withholdings and that DOJ has failed to specify any specific harms to protected interests that DOJ reasonably foresees will result if these withholdings are disclosed. *See id.* § 552(a)(8)(A)(i).

The Court agrees that DOJ has failed to identify specific reasonably foreseeable harms that would result from disclosure as required under the FOIA Improvement Act of 2016. Although the Court does not consider each withholding in depth, it also finds lacking the information provided

1

by DOJ as to the basis for withholding the summaries in Document 5276-1. Accordingly, upon consideration of the briefing,[1] the relevant legal authorities, and the record as it currently stands, the Court **DENIES WITHOUT PREJUDICE** DOJ's Motion for Summary Judgment and **HOLDS IN ABEYANCE** Judicial Watch's Cross-Motion for Summary Judgment. The Court shall allow DOJ an opportunity to submit another Motion for Summary Judgment, along with any supporting affidavits and an amended *Vaughn* index, addressing the deficiencies that the Court identifies below.

## I. BACKGROUND

On February 1, 2017, Judicial Watch made a FOIA request for emails received by or sent from the DOJ email account used by former Acting Attorney General Sally Yates from January 21, 2017 through January 31, 2017. Stmt. of Material Facts, ECF No. 18-2, ¶ 1. DOJ acknowledged receipt, and when DOJ failed to produce responsive records, Judicial Watch filed suit on May 5, 2017, to obtain them. *Id.* ¶¶ 2–3. DOJ produced responsive records in two productions on October 24, 2017 and November 24, 2017 and a supplemental production on March 30, 2018. *Id.* ¶ 5.

DOJ withheld certain documents, claiming that they qualified for either the deliberative process privilege or attorney work product privilege under FOIA Exemption 5. *Id.* ¶ 6. These documents include intra-agency discussions of press inquiries and reports related to Executive

---

[1] The Court's consideration has focused on the following documents:
- Def.'s Mem. in Supp. of U.S. Dep't of Justice's Mot. for Summ. J., ECF No. 18-1 ("Def.'s Mem.");
- Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot., ECF No. 21 ("Pl.'s Combined Opp'n & Mem.");
- Reply Mem. in Supp. of U.S. Dep't of Justice's Mot. for Summ. J. and in Opp'n to Judicial Watch's Cross-Mot. for Summ. J., ECF No. 22 ("Def.'s Combined Reply & Opp'n"); and
- Pl.'s Reply to Def.'s Opp'n to Cross-Mot. for Summ. J., ECF No. 24 ("Pl.'s Reply").

2

Order 13,679; intra-agency discussions about communications and decision-making processes; drafts of the memorandum that Yates issued on January 30, 2017 regarding Executive Order 13,679; a draft of a memorandum never issued by Yates; an email listing the attendees of a DOJ meeting; and a chart with summaries of recent or expected developments in certain litigation. Decl. of Vanessa R. Brinkmann ("Brinkmann Decl."), ECF No. 19, ¶¶ 12(a), 12(d), 12(f)–(g), 12(i). Judicial Watch disagrees with DOJ's invocation of Exemption 5 as to these documents and further contends that DOJ has failed to articulate specific reasonably foreseeable harms that would occur as a result of disclosure for each category of withholdings.

## II. LEGAL STANDARD

Congress passed FOIA to "'open[] up the workings of government to public scrutiny' through the disclosure of government records." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984) (quoting *McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1108 (D.C. Cir. 1983)). Congress, however, also recognized "that there are some government records for which public disclosure would be so intrusive—either to private parties or to certain important government functions—that FOIA disclosure would be inappropriate." *Id.* To that end, FOIA "mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). Despite these exemptions, "disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). The exemptions are therefore "'explicitly made exclusive' and must be 'narrowly construed.'" *Milner*, 562 U.S. at 565 (citations omitted) (quoting *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 79 (1973); *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 630 (1982)).

When presented with a motion for summary judgment in this context, the court must conduct a de novo review of the record. 5 U.S.C. § 552(a)(4)(B). This requires the court to "ascertain whether the agency has sustained its burden of demonstrating the documents requested are . . . exempt from disclosure under the FOIA." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (internal quotation marks omitted). "An agency may sustain its burden by means of affidavits, but only 'if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Id.* at 1227 (quoting *Gallant v. Nat'l Labor Relations Bd.*, 26 F.3d 168, 171 (D.C. Cir. 1994)). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011).

Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. DISCUSSION

Judicial Watch has challenged DOJ's withholdings on two main bases: (1) that DOJ has failed to meet its burden of proof to detail the reasonably foreseeable harms that would occur as a result of disclosure and (2) that these withholdings were not proper pursuant to Exemption 5. The

Court will first consider whether DOJ has met its burden to provide specific foreseeable harms for each category of withholdings before turning to whether DOJ has provided sufficient information as to the summaries withheld in Document 5276-1 in particular.

As the Court concludes that DOJ has not met its burden with respect to the requirements of the FOIA Improvement Act of 2016, the Court does not reach the question of whether any withholdings were ultimately proper under FOIA Exemption 5. The Court further finds that DOJ has not met its burden to provide sufficient information regarding the summaries withheld in Document 5276-1.

### A. DOJ has not provided specific reasonably foreseeable harms that would occur as a result of disclosure for all its withholdings.

Congress passed the FOIA Improvement Act of 2016 both to address a "growing backlog" of FOIA requests and out of concern that "agencies [we]re overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure." S. Rep. No. 114-4 (2016), *as reprinted in* 2016 U.S.C.C.A.N. 321, 322. Senate Report 114-4 discussed in particular the "growing and troubling trend towards relying on these discretionary exemptions"—especially Exemption 5—"to withhold large swaths of Government information, even though no harm would result from disclosure." *Id.* at 323.

The Act therefore provided for a "presumption of openness" for FOIA requests and "mandate[d] that an agency may withhold information only if it reasonably foresees a specific identifiable harm to an interest protected by an exemption, or if disclosure is prohibited by law." *Id.* at 324. In particular, it was contemplated that information should "not be withheld 'merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears.'" *Id.* (quoting President Barack Obama,

Memorandum for the Heads of Executive Departments and Agencies, Subject: Freedom of Information Act (Jan. 21, 2009)).

To that end, the FOIA Improvement Act provided that "[a]n agency shall withhold information" under the discretionary FOIA exemptions, including Exemption 5, "only if the agency reasonably foresees that disclosure would harm an interest protected by" a discretionary exemption or if "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "Stated differently, pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018).

While there are few cases interpreting the Act's requirements, two courts in this Circuit have considered the Act in some depth. In *Rosenberg v. U.S. Department of Defense*, the court examined persuasive authority and the text of the Act itself to find that the agency was required to "explain how a particular Exemption 5 withholding would harm the agency's deliberative process." *Id.* at 78. While the agency could "take a categorical approach—that is, group together like records," it still had to "explain the foreseeable harm of disclosure for each category." *Id.* The court ultimately found that the agency's statement that disclosure of the information withheld would "impede open discussion on these issues" was insufficient. *See id.* at 77–78; *see also Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, No. 16-cv-05254-MEJ, 2017 WL 5972702, at *6 (N.D. Cal. Nov. 30, 2017) (finding that because agency did not "provide basic information about the deliberative process at issue and the role played by each specific document," it had "fail[ed] to explain how disclosure would expose [its] decision-making process so as to

discourage candid discussion" and therefore did not "meet its burden"), *appeal dismissed*, No. 17-17539, 2018 WL 3155689 (9th Cir. Jan. 12, 2018).

The court in *Judicial Watch, Inc. v. U.S. Department of Commerce* similarly found that the Act imposed a "heightened standard" on the agency based on "the text and purpose of the Act." 375 F. Supp. 3d 93, 100 (D.D.C. 2019). The court examined the history underlying the Act, and noted in particular that House Report 114-391 specified that an "'inquiry into whether an agency has reasonably foreseen a specific, identifiable harm that would be caused by a disclosure would require the ability to articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld.'" *Id.* at 100 (quoting H.R. Rep. No. 114-391, at 9 (2016)). Ultimately, the court found that the agency's general explanations of a possible chilling effect were insufficient. *Id.* at 100–01. The agency had failed to meet its burden because it "provided no explanation as to why disclosure [wa]s likely to discourage frank and open dialogue as to the specific withholdings—or categories of withholdings—in [the] case." *Id.* at 101.

In addition to these cases, other courts that have considered the statute in depth have also concluded that the Act provides a meaningful and heightened standard that the agency must satisfy. *See, e.g.*, *Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, No. 17-CV-5928 (JMF), 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019) (finding that "generic, across-the-board articulations of harm provided by the [agency] as to a broad range of document types," including that disclosure would "discourage open and frank discussion" and "have a chilling effect on the Agency's decision-making processes," were insufficient under standard (internal quotation marks omitted)); *Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, No. 17-CV-5928 (JMF), 2019 WL 4142725, at *5 (S.D.N.Y. Aug. 30, 2019) (finding that agency had provided sufficient information in supplemental affidavit because it "provided substantially more context for the decisionmaking

processes in question and the harms that would reasonably ensure from disclosure of the material—which ma[de] all the difference"); *Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, No. 18-CV-11227 (PKC), 2019 WL 3959992, at *9 (S.D.N.Y. Aug. 22, 2019) (finding that agency "describe[d] in reasonable detail the foreseeable Exemption-5 related interests that would be harmed upon disclosure of" withheld materials).

The Court finds the reasoning in *Rosenberg* and *Judicial Watch v. U.S. Department of Commerce* persuasive in light of the Act's text, history, and purpose. Accordingly, the Court concludes that the FOIA Improvement Act imposes a meaningful and independent burden on agencies to detail the specific reasonably foreseeable harms that would result from disclosure of certain documents or categories of documents. *See Rosenberg*, 342 F. Supp. 3d at 78 (noting that agency could take categorical approach). DOJ has not carried its burden here.

DOJ provides nearly identical boilerplate statements regarding the harms that will result throughout its first affidavit and *Vaughn* index. For example, as to the drafts withheld in full, the first affidavit states that disclosure "would undermine the ability of Department staff to freely engage in the candid 'give and take' and forthright collaboration which is critical to the eventual development of well-reasoned and accurate final documents." Brinkmann Decl. ¶ 21; *see also id.* ¶ 19 ("Revealing such opinions would hinder the ability of agency staff to provide candid evaluations and recommendations."). The affidavit further includes the following articulation regarding the emails withheld in part:

> Disclosure of the e-mails and attachments at issue would severely hamper the efficient day-to-day workings of the Department as individuals would no longer feel free to discuss their ideas, strategies, and advice in e-mail messages, and Department employees would be much more circumspect in their discussions with each other and with other Executive Branch officials. This lack of candor would seriously impair the Department's ability to foster the forthright internal discussions necessary for efficient and proper decision-making. Certainly, disclosure of such preliminary assessments and opinions would make officials

contributing to pre-decisional deliberations much more cautious in providing their views. Agency decision-making is at its best when employees are able to focus on the substance of their views and not on whether their views may at some point be made publicly available.

*Id.* ¶ 25. Overall, although it is at times difficult to correlate the first affidavit and *Vaughn* index to the documents challenged by Judicial Watch, the affidavit and *Vaughn* index contain similar boilerplate language for each category of withheld material. *See id.* ¶ 29 (regarding documents withheld on attorney work product privilege grounds: "Disclosure of the information reasonably could be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when Department officials have internal discussions expressing opinions on pending or anticipated cases."); *id.* Ex. G at 2 (regarding documents withheld in full: "Revealing such opinions would hinder the ability of agency staff to provide candid evaluations and recommendations."); *see also id.* Ex. G at 4–9 (including similar language regarding documents withheld in part).

Like the generic descriptions of harm provided in *Rosenberg* and *Judicial Watch v. U.S. Department of Commerce*, these generic and nebulous articulations of harm are insufficient. The agency has failed to identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials. Furthermore, it has not connected the harms in any meaningful way to the information withheld, such as by providing context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure. *See, e.g.*, *Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, 2019 WL 4142725, at *5 (detailing how agency had provided extensive information on how disclosure of certain records would harm interests protected by deliberative process privilege). At bottom, the agency has not explained in sufficient detail how "*particular* Exemption 5 withholding[s] would harm the agency's deliberative process." *Rosenberg*, 342 F. Supp. 3d at 78 (emphasis added).

Accordingly, the Court denies DOJ's Motion for Summary Judgment. However, in light of the interests underlying the deliberative process privilege and attorney work product privilege invoked by DOJ, the Court will deny the Motion without prejudice.

> B.  DOJ has not provided sufficient information to determine whether its withholding of certain summaries in Document 5276-1 was proper.

Document 5276-1 is a thirty-page chart titled "Sensitive or High-Profile Matters within Next Two Weeks." Brinkmann Decl. ¶ 12(i). It contains "summaries of recent or expected developments in litigation to which the Department of Justice was a party" and it was "prepared so that Department of Justice officials could supervise and direct that litigation." *Id.* DOJ withheld certain summaries in Document 5276-1 on two grounds: the attorney work product privilege and the deliberative process privilege, both of which fall under Exemption 5. Judicial Watch contends that DOJ has not met its burden for either ground.

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Exemption 5 has been construed "to exempt those documents, and only those documents, normally privileged in the civil discovery context." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). This includes the attorney work product privilege and the deliberative process privilege. *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996). Here, DOJ has provided insufficient information for the Court to determine whether the summaries in Document 5276-1 are protected by either privilege.

*1. Attorney Work Product Privilege*

First, DOJ contends that all but ten of the withheld entries are protected as attorney work product. The attorney work product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," which includes "the other party's attorney." Fed. R. Civ. P. 26(b)(3); *see Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997). It "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1208 (D.C. Cir. 1992), *abrogated on other grounds by Milner*, 562 U.S. 562. The "mere possibility" of litigation, on the other hand, is not "tangible enough." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980). "[I]f the agency were allowed 'to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'" *Senate of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 587 (D.C. Cir. 1987) (quoting *Coastal States*, 617 F.2d at 865).

The relevant inquiry is therefore "'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999) (quoting *Senate of P.R.*, 823 F.2d at 586 n.42). To meet this standard, the lawyer must "have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). To discharge its burden, DOJ must therefore do four things: "(1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and

11

(4) provide some indication of the type of litigation for which the document's use is at least foreseeable." *Ellis v. U.S. Dep't of Justice*, 110 F. Supp. 3d 99, 108 (D.D.C. 2015), *aff'd*, No. 15-5198, 2016 WL 3544816 (D.C. Cir. June 13, 2016). DOJ has not done so here.

The chart at issue here has numerous entries that appear to pertain to different components. DOJ also appears to have treated each entry individually in determining whether to invoke the attorney work product privilege over that entry. *See* Pl.'s Combined Opp'n & Mem. Ex. 5. The explanation of Document 5267-1 in the first affidavit submitted by DOJ reads:

> Document 5276-1 is a thirty-page chart entitled "Sensitive or High-Profile Matters within Next Two Weeks." It contains many summaries of recent or expected developments in litigation to which the Department of Justice was a party, prepared so that Department of Justice officials could supervise and direct that litigation. These summaries were withheld pursuant to the attorney work-product doctrine and the deliberative process privilege. They do not contain any additional segregable, non-exempt information.

Brinkmann Decl. ¶ 12(i). The *Vaughn* index has a similar description of the attorney work product basis for withholding this document:

> **Attorney Work Product.** This document contains summaries written by DOJ attorneys at various DOJ components about pending or anticipated litigation. The summaries include attorney notes, opinions, and recommendations for actions in specific, ongoing, or anticipated cases. These discussions are related to Departmental actions proposed to be taken in reasonable anticipation of litigation.

*Id.* Ex. G at 9. DOJ's briefing contains similarly broad descriptions of the chart, with a few descriptions that seem to relate to—but are not explicitly correlated with—specific withheld entries. *See, e.g.*, Def.'s Mem. at 13 ("These withheld summaries were prepared by Department of Justice attorneys because of the litigation they discuss (whether pending or anticipated) and are therefore protected by the attorney work product doctrine."); Def.'s Combined Reply & Opp'n at 7 ("The redacted entries include recommendations about whether rehearing *en banc* should be sought in one case, assessments of whether a particular legal theory is likely to prove troublesome

in another, and predictions of the course of litigation in many cases."). The same is true of the second affidavit submitted by DOJ:

> All of the entries withheld pursuant to the attorney work-product doctrine were prepared in anticipation of pending or expected litigation, so that the Acting Attorney General and her staff could effectively direct the course of the Department's litigation. These entries discuss matters such as whether rehearing *en banc* should be sought, and whether a particular legal theory is likely to prove troublesome. They include predictions of the course of litigation in many cases. Sensitive details of criminal prosecutions are also discussed.

Second Decl. of Vanessa R. Brinkmann ("Second Brinkmann Decl."), ECF No. 23-1, ¶ 5.

Judicial Watch argues that DOJ has not met its burden in part because it has not provided sufficient information regarding the attorneys who created, compiled, or edited the chart. *See* Pl.'s Combined Opp'n & Mem. at 14. DOJ does not necessarily need to provide details regarding every attorney who worked on the chart. *See, e.g.*, *Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office for U.S. Attorneys*, 844 F.3d 246, 251–52 (D.C. Cir. 2016) (agreeing with trial court that DOJ guidebook drafted by various unnamed federal prosecutors was attorney work product).

However, an issue does arise because DOJ has treated the entire chart as a whole in providing information relevant to this privilege, but treated each entry individually in determining whether to invoke the privilege over that entry. Consequently, it has failed to provide information as to each invocation—each entry, or even each category of entries within the chart. Because each entry differs in its subject matter and DOJ invokes the privilege as to each withheld entry, DOJ must provide enough information for the Court to evaluate whether each of the withheld summaries was appropriately withheld as attorney work product. *See Ellis*, 110 F. Supp. 3d at 108 (describing agency's burden). While DOJ has given a broad description of the chart, explained its general origins, and identified that DOJ attorneys are responsible, *see* Brinkmann Decl. ¶ 12(i); *id.* Ex. G at 9; Second Brinkmann Decl. at ¶¶ 4–6, it has not provided sufficient specific information

about the individual entries, their origins, and their connections to ongoing or anticipated litigation for the Court to determine whether the withheld portions are protected by the attorney work product privilege. The Court therefore cannot determine whether the withheld entries themselves, rather than the chart as a whole, "relate to the conduct of either on-going or prospective trials" or "include factual information, mental impressions, conclusions, opinions, legal theories or legal strategies relevant to any on-going or prospective trial." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 776–77 (D.C. Cir. 1978), *overruled in part on other grounds*, *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1053 (D.C. Cir. 1981) (en banc). Accordingly, DOJ has not satisfied its burden on this ground.

### 2. Deliberative Process Privilege

Second, DOJ has not provided enough information for the Court to determine whether certain entries are protected from disclosure under the deliberative process privilege. According to DOJ, ten entries are protected by the deliberative process privilege alone, *see* Def.'s Reply at 8, and an unspecified number of entries are protected by both the attorney work product privilege and the deliberative process privilege, *id.* at n.1.

Congress included the deliberative process privilege in Exemption 5 out of the fear that "the quality of administrative decision-making would be seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal or policy matters would be impossible." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977). The privilege therefore "protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982). Consistent with congressional intent, this Circuit has construed

14

Exemption 5 "'as narrowly as consistent with efficient Government operation.'" *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773–74 (D.C. Cir. 1988) (en banc) (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)).

For the deliberative process privilege to apply, the withheld materials must be both pre-decisional and deliberative. *Id.* at 774. "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). Material is deliberative if "it reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866. The agency has the burden of demonstrating that the privilege applies, and "the law is well-settled that '[t]he agency must establish what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 20 F. Supp. 3d 260, 269 (D.D.C. 2014) (quoting *Senate of P.R.*, 823 F.2d at 585–86). "Merely stamping on the face of the documents that they are subject to the deliberative process privilege is not sufficient." *Id.*

DOJ provides little information for this Court to consider in determining whether the ten entries, and numerous other unspecified entries, are protected. The first affidavit only describes the document, as noted above, and explains that "[t]hese summaries were withheld pursuant to the attorney work-product doctrine and the deliberative process privilege." Brinkmann Decl. ¶ 12(i); *see also* Second Brinkmann Decl. ¶¶ 4–6 (providing similar broad description and justifications). The *Vaughn* index further provides in part that:

> The withheld information consists of internal Department of Justice deliberations about ongoing matters. The information is pre-decisional, as the deliberations were still ongoing and no responses had yet been determined and been provided to the

15

> public. It is deliberative because it reflects the thoughts of Department of Justice employees.

*Id.* Ex. G at 9. The briefing contains similar descriptions. *See, e.g.*, Def.'s Mem. at 13 (describing these entries as "[c]ommunications between Department of Justice officials as to developments in pending litigation and the government's strategy in such cases").

Upon inspection, the information provided in the declaration and *Vaughn* index are too vague for the Court to determine whether the individual summaries have been properly withheld under the deliberative process privilege. Like with its invocation of the attorney work product privilege, DOJ has treated the chart as a whole and failed to treat each entry (or even category of entries) separately. As a result, DOJ has provided too little information to carry its burden here. DOJ does not even identify all the entries that are protected by this privilege. *See* Def.'s Reply at 8 & n.1. Moreover, DOJ does not fully explain the deliberative processes, or final policies or decisions, connected with these entries, nor does it provide even broad descriptions of the subject-matter or content of almost all the withheld entries. *See* Second Brinkmann Decl. ¶ 5 (explaining general content of a few entries in attorney work product privilege context without correlating descriptions to specific entries). As the privilege only applies to documents "'antecedent to the adoption of an agency policy,'" it follows that DOJ must provide enough information about the processes, decisions, or policies at issue to aid the Court in determining whether these entries were part of a deliberative process that preceded an agency decision or policy. *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 217–18 (D.D.C. 2012) (quoting *Jordan*, 591 F.2d at 774); *see also SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1204 (D.C. Cir. 1991) ("To carry its burden, the agency must describe not only the contents of the document but also enough about its context, *viz.* the agency's decisionmaking process, to establish that it is a pre-decisional part thereof.").

In other words, DOJ must provide enough information for this Court to determine whether the withheld entries are both predecisional and deliberative. DOJ must provide sufficient context for the summaries demonstrating that they constitute part of a deliberative process and preceded an agency decision or decisions, which might include information such as the relevant processes and the role the entries played in those processes, pertinent dates, or the relevant agency decisions or policies at issue (even in broad terms). *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 20 F. Supp. 3d at 269 (noting that "courts determine whether a document is predecisional by looking at the timing of the document's release relative to the date the decision is made" and collecting relevant cases). DOJ must also explain why these summaries are deliberative, potentially by providing the authors' positions or identities, the relationship between the authors and the recipients, and "the nature of the discussion in the challenged document" and "whether it sets out the author's view of options and considerations" rather than "explain[ing] or express[ing] the policy itself." *Id.* at 271. The agency has not provided enough information here as to the individual entries. Instead, it has essentially stamped these entries as subject to a predecisional deliberative process without elaboration, which is insufficient. *See, e.g.*, *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006) (finding that vague descriptions of documents without any explanation of content or related policies was insufficient to determine whether deliberative process privilege applied). Accordingly, DOJ has failed to meet its burden on this ground for withholding as well.

## IV. CONCLUSION

Although the Court has not addressed all of DOJ's withholdings, and makes no findings as to withholdings not addressed in this Memorandum Opinion, it has identified several deficiencies with the declaration and *Vaughn* index submitted by DOJ in support of its Motion for Summary

Judgment.  Overall, DOJ has not met its burden under the FOIA Improvement Act of 2016 as to all withholdings and has provided insufficient information as to Document 5276-1 in particular. In light of the identified deficiencies, the Court denies DOJ's Motion for Summary Judgment.

However, considering the importance of the exemptions at issue here, the Court **DENIES WITHOUT PREJUDICE** DOJ's Motion and **HOLDS IN ABEYANCE** Judicial Watch's Cross-Motion for Summary Judgment.  If DOJ decides to file a second Motion for Summary Judgment, this will allow DOJ the opportunity to address the clear deficiencies outlined in this Memorandum Opinion and to "provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Mead Data Cent.*, 566 F.2d at 251.

Accordingly, DOJ shall file any new Motion for Summary Judgment no later than **OCTOBER 25, 2019**.  Judicial Watch shall file any Opposition on or before **NOVEMBER 8, 2019**, and DOJ shall any Reply on or before **NOVEMBER 15, 2019**.

An appropriate Order accompanies this Memorandum Opinion.

Dated:  September 24, 2019

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge