UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,
       Plaintiff,

    v.

U.S. DEPARTMENT OF JUSTICE,
       Defendant.

Civil Action No. 17-0832 (CKK)

**MEMORANDUM OPINION**
(September 18, 2020)

      This lawsuit arises from a Freedom of Information Act ("FOIA") request that Plaintiff Judicial Watch, Inc. made to Defendant United States Department of Justice ("DOJ") in 2017 for certain emails received by or sent from the DOJ email account used by former Acting Attorney General Sally Yates. Now pending before the Court is DOJ's Second Motion for Summary Judgment and Judicial Watch's Cross-Motion for Summary Judgment. Upon consideration of the pleadings, the relevant legal authorities, and the record as a whole,[1] the Court **GRANTS** DOJ's Second Motion for Summary Judgment, ECF No. 29, and **DENIES** Judicial Watch's Cross-Motion for Summary Judgment, ECF No. 21.

**I. BACKGROUND**

      Sally Q. Yates served as Acting Attorney General of the United States from January 20, 2017 to January 30, 2017. On January 30, 2017, Acting Attorney General Yates issued a

---

[1] This Memorandum Opinion focuses on the following briefing and evidence submitted by the parties:
- Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot., ECF No. 21;
- Def.'s Mem. in Supp. of U.S. Dep't of Justice's Second Mot. for Summ. J. ("Def.'s Mot"), ECF No. 29-1;
- Pl.'s Mem. of P. & A. in Opp'n to Def.'s Second Mot. for Summ. J. (Pl.'s Opp'n), ECF No. 30;
- Pl.'s Resp. to Def.'s Second Stmt. of Mat. Facts ("Pl.'s Stmt."), ECF No. 30; and,
- Def.'s Reply to Pl.'s Mem. of P. & A. in Opp'n to Def.'s Second Mot. for Summ. J., ECF No. 31.

1

memorandum instructing attorneys within the Department of Justice not to defend Executive Order 13,769 (the "Executive Order"), which suspended immigration benefits to nationals of certain countries.  Pl.'s Stmt. ¶¶ 6–7.  Later that evening, the White House announced that President Donald J. Trump had "relieved Ms. Yates of her duties," because she had "betrayed the Department of Justice by refusing to enforce a legal order designed to protect citizens of the United States."  *Id.* ¶ 7.

On February 1, 2017, Judicial Watch made a FOIA request for emails received by or sent from the DOJ email account used by Ms. Yates from January 21, 2017 through January 31, 2017.  *See id.* ¶ 1.  DOJ acknowledged receipt of Judicial Watch's FOIA request, and Judicial Watch subsequently filed this present lawsuit on May 5, 2017.  *Id.* ¶¶ 2–3.  In response, DOJ made multiple productions of documents to Judicial Watch, *see id.* ¶ 5, but ultimately withheld sixteen documents under the deliberative process and attorney-work product privileges provided for in FOIA Exemption 5, *see* Mem. Op., ECF 27, at 2.  To support these withholdings, DOJ submitted a *Vaughn* Index and a supporting affidavit, then filed for summary judgment.  *See* DOJ *Vaughn* Index, ECF No. 19-2, at 2; Brinkmann Decl. (Aug. 23, 2018), ECF No. 19, ¶ 12(a).  Judicial Watch opposed DOJ's first summary judgment motion and filed a cross-motion for summary judgment in response.  On September 24, 2019, the Court denied DOJ's motion for summary judgment.  Specifically, the Court found that DOJ had "failed to identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials," and, therefore, had not met its burden of proof under the FOIA Improvement Act of 2016.  Mem. Op., ECF 27, at 10.  Nonetheless, the Court held Judicial Watch's cross-motion for summary judgment in abeyance and permitted DOJ an opportunity to supplement the record with more specific support for its withholdings.  *Id.* at 18.

Following the Court's September 24, 2019 order, DOJ made a supplemental production of one of the previously withheld documents. *See* Pl.'s Stmt. ¶ 5; Brinkmann Decl. (Nov. 5, 2019), ECF No. 30-2, ¶ 4. Judicial Watch then further narrowed the scope of the disputed documents by exclusively limiting its challenge to four withheld drafts of Acting Attorney General Yates' January 30, 2017 memorandum regarding Executive Order 13,769. *See* Pl.'s Opp'n at 1–2 (limiting the dispute to Documents 5153-1, 5156-1, 5164-1, and 5182-1). These four drafts were each attachments to emails DOJ has already produced to Judicial Watch. *See* Pl.'s Stmt. ¶ 8. DOJ has now filed a renewed summary judgment motion and submitted an additional affidavit in support of its decision to withhold these documents, specifically under the deliberative process privilege within FOIA Exemption 5. *See* Def.'s Mot. at 10–14; Brinkmann Decl. (Nov. 5, 2019), ECF No. 30-2, ¶¶ 75–77. Judicial Watch opposes DOJ's renewed motion and also re-incorporates its original cross-motion for summary judgment, still pending before the Court. *See* Pl.'s Opp'n at 1, n.1. The parties' motions are now ripe for review.

## II. LEGAL STANDARD

Congress passed FOIA to "'open[] up the workings of government to public scrutiny' through the disclosure of government records." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984) (quoting *McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1108 (D.C. Cir. 1983)). Congress, however, also recognized "that there are some government records for which public disclosure would be so intrusive—either to private parties or to certain important government functions—that FOIA disclosure would be inappropriate." *Id.* To that end, FOIA "mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). Despite these exemptions, "disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*,

425 U.S. 352, 361 (1976).  The exemptions are therefore "'explicitly made exclusive' and must be 'narrowly construed.'"  *Milner*, 562 U.S. at 565 (citations omitted) (quoting *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 79 (1973); *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 630 (1982)).

When presented with a motion for summary judgment in this context, the Court must conduct a de novo review of the record.  5 U.S.C. § 552(a)(4)(B).  This requires the court to "ascertain whether the agency has sustained its burden of demonstrating the documents requested are . . . exempt from disclosure under the FOIA."  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (internal quotation marks omitted).  "An agency may sustain its burden by means of affidavits, but only 'if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'"  *Id.* (quoting *Gallant v. Nat'l Labor Relations Bd.*, 26 F.3d 168, 171 (D.C. Cir. 1994)).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone."  *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011).  "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011).

Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### III. DISCUSSION

Judicial Watch has narrowed its challenge to four drafts of Acting Attorney General Sally Yates' January 30, 2017 memorandum regarding Executive Order 13,769. *See* Pl.'s Opp'n at 1–2. DOJ has withheld these four documents under the deliberative process privilege within FOIA Exemption 5. *See Vaughn* Index, ECF No. 19-2, at 2; Brinkmann Decl. (Nov. 5, 2019), ECF No. 30-2, ¶¶ 75–77. For the reasons set forth herein, the Court finds that DOJ's withholdings under Exemption 5 are now proper.

**A. FOIA Exemption 5 And The FOIA Improvement Act**

FOIA "Exemption 5 shields documents that would 'normally be privileged from discovery in civil litigation against the agency,' such as documents protected by the attorney-client, work-product, and deliberative process privileges." *Danik v. U.S. Dep't of Justice*, No. 17-CV-1792 (TSC), 2020 WL 2838584, at *5 (D.D.C. May 31, 2020) (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997)). "To fall within the scope of the deliberative process privilege," which DOJ claims here, the "withheld materials must be both 'predecisional' and 'deliberative.'" *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 99 (D.D.C. 2019) (quotation omitted). "A communication is predecisional if 'it was generated before the adoption of an agency policy' and deliberative if it 'reflects the give-and-take of the consultative process.'" *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)); *see also Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017).

In 2016, Congress supplemented FOIA exemptions, like Exemption 5, with the FOIA Improvement Act. *See* S. Rep. No. 114-4 (2016), *as reprinted in* 2016 U.S.C.C.A.N. 321, 322. The Act set forth a "presumption of openness" for FOIA requests and "mandate[d] that an agency may withhold information only if it reasonably foresees a specific identifiable harm to an interest

protected by an exemption, or if disclosure is prohibited by law." *Id.* at 324; *see also* 5 U.S.C. § 552(a)(8)(A)(i). "Stated differently, pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018). Notably, an "inquiry into whether an agency has reasonably foreseen a specific, identifiable harm that would be caused by a disclosure [ ] require[s] the ability to articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld." *U.S. Dep't of Commerce*, 375 F. Supp. 3d at 100 (quotation omitted).

### B. DOJ's Withholdings Of The Draft Memoranda Are Proper

DOJ has invoked the deliberative process privilege under FOIA Exemption 5, to withhold four drafts of Acting Attorney General Yates' January 30, 2017 memorandum regarding Executive Order 13,769. *See* 5 U.S.C. § 552(b)(5). Document 5182-1 is an attachment entitled "draft.docx," which then-Principal Associate Deputy Attorney General Matthew S. Axelrod emailed to Ms. Yates at 8:41 AM on January 30, 2017. *See* Pl.'s Stmt. ¶ 9. Document 5164-1 is another attachment entitled "Draft2.docx," which Mr. Axelrod included in a subsequent January 30, 2017 email sent to Ms. Yates at 1:44 PM. *See id.* ¶ 10. Later that day, at 2:58 PM, Ms. Yates emailed the document entitled "Draft2.docx" from her government email to her personal email account (Document 5156-1). *See id.* ¶ 11. And finally, at 5:27 PM, Ms. Yates again emailed the document entitled "Draft2.docx" from her government email to her personal email account (Document 5153-1). *See id.* ¶ 12. DOJ has acknowledged that these four documents (5182-1, 5164-1, 5156-1, and 5153-1) are "working drafts" of Ms. Yates' final memorandum regarding the Executive Order. *See id.* ¶ 8; Brinkmann Decl. (Aug. 23, 2018), ¶ 12(a).

As an initial matter, the Court has little trouble finding that these four draft memoranda fall under the deliberate process privilege within FOIA Exemption 5.  Working drafts of a DOJ policy statement to be issued by the Acting Attorney General regarding the legality of an executive order appear manifestly "deliberative" and "predecisional."  *See People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007) (explaining that "drafts are commonly found exempt under the deliberative process exemption").  This is particularly true given that these documents "reveal the drafters' evolving thought-processes regarding the Executive Order," and were transmitted directly between Ms. Yates and one of her principal aides.  Brinkmann Decl. (Nov. 5, 2019), ECF No. 30-2, ¶ 76; *see also Coastal States Gas Corp.*, 617 F.2d at 866 ("The exemption thus covers recommendations, draft documents, proposals, [and] suggestions . . . ").  Indeed, Judicial Watch's renewed opposition brief focuses not on the applicability of Exemption 5, *per se*, but rather the effect of the FOIA Improvement Act and the so-called "government misconduct" exception, both addressed below.  *See* Pl.'s Opp'n at 5–9. Consequently, the Court concludes that the four withheld draft memoranda properly fall under the deliberative process privilege of FOIA Exemption 5.  *See* 5 U.S.C. § 552(b)(5); *see also Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 78 (D.D.C. 2018) (noting that an agency may "take a categorical approach" and "group together like records").

A more difficult question, however, is whether DOJ has set forth a sufficient justification for its FOIA withholdings under the FOIA Improvement Act.  5 U.S.C. § 552(a)(8)(A)(i).  Even where FOIA Exemption 5 applies, DOJ must still demonstrate a link between some reasonably foreseeable harm and the disclosure of the specific information contained in the documents withheld.  *U.S. Dep't of Commerce*, 375 F. Supp. 3d at 100 (quotation omitted).  Here, the deliberative process privilege at issue implicates several exemption-protected interests: (1) "it

protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions," (2) "it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon," and (3) "it protects the integrity of the decision-making process itself by confirming that officials would be judged by what they decided, not for matters they considered before making up their minds." *Machado Amadis v. Dep't of Justice*, 388 F. Supp. 3d 1, 18–19 (D.D.C. 2019), *aff'd sub nom. Machado Amadis v. United States Dep't of State*, No. 19-5088, 2020 WL 4914093 (D.C. Cir. Aug. 21, 2020).

With its renewed motion for summary judgment, DOJ has submitted a supplemental affidavit from Ms. Vanessa Brinkmann, Senior Counsel at DOJ's Office of Information Policy ("OIP"). *See* Brinkmann Decl. (Nov. 5, 2019), ECF No. 30-2, ¶¶ 1–2. Therein, Ms. Brinkmann explains that disclosure of the four drafts of Ms. Yates' memorandum regarding Executive Order 13,769 would jeopardize each of the aforementioned exemption-protected interests. First, Ms. Brinkmann states that the disclosures would "undermine the ability of Department staff to freely engage in the candid 'give and take' and forthright internal development of final agency actions." *Id.* ¶ 76. Next, she asserts that such disclosures would also "result in public confusion from the disclosure of reasons and rationales that were not ultimately the grounds for the Department's final actions." *Id.* Finally, Ms. Brinkmann notes that these disclosures would unfairly open the Attorney General up to public judgment on the basis of draft language antecedent to final agency statements. *See id.* ¶ 77.

Importantly, Ms. Brinkmann's affidavit also explains *why* the disclosure of these particular draft memoranda would implicate the specific harms identified. For example, Ms. Brinkmann notes that Documents 5153-1, 5156-1, 5164-1, and 5182-1 "reflect successive version[s] of

working drafts, and as such, show the internal development of . . . Acting Attorney General Yates' letter on January 30, 2017, instructing Department of Justice officials not to defend the validity of Executive Order 13,769." *Id.* ¶ 76.  Ms. Brinkmann's affidavit then further states that "[t]he disclosure of the drafts of this final statement would reveal the drafters' evolving thought-processes regarding the Executive Order, as well as ideas and alternatives considered but ultimately rejected in the final agency decision." *Id.*  And, as Ms. Brinkmann explains, the chilling effect threatened by the disclosure of Ms. Yates' draft memoranda is "especially acute" because these documents implicate a sensitive DOJ matter. *Id.* ¶ 77.  Specifically, "[t]he simple possibility of the eventual release of a rejected draft statement on such a high-profile matter as the defense of Executive Order 13,769 would impair everyone involved in the drafting of such a statement, including the Attorney General himself, from thinking, writing, and advising freely." *Id.*

The Court concludes that DOJ's revised justification for its Exemption 5 withholdings, provided in Ms. Brinkmann's supplemental affidavit, satisfies the FOIA Improvement Act.  The Court reaches this decision specifically in view of the D.C. Circuit's recent holding in *Machado Amadis v. United States Dep't of State*, --- F.3d ---, No. 19-5088, 2020 WL 4914093 (D.C. Cir. Aug. 21, 2020).  In *Machado Amadis*, a FOIA plaintiff had requested documents from DOJ's Office of Information Policy (OIP) pertaining to his own FOIA appeal. *Id.* at *1.  In response, OIP produced a number of relevant "Blitz Forms," which are the documents OIP uses to adjudicate FOIA appeals. *Id.* at *3.  OIP, however, redacted portions of these Blitz Forms under the deliberative process privilege of FOIA Exemption 5. *Id.* at *4.  As OIP's supporting affidavit explained, the redacted material therein revealed the "line attorneys' evaluations, recommendations, discussions, and analysis which are prepared for senior-level review and decisionmaking." *Id.*  OIP's affidavit further stated that disclosure of this analysis "would

9

discourage line attorneys from candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals." *Id.* Upon review of this OIP affidavit, the D.C. Circuit affirmed the deliberative process redactions, finding that "OIP specifically focused on 'the information at issue' in the Blitz Forms under review" and properly "concluded that disclosure of that information 'would' chill future internal discussions." *Id.*

Ms. Brinkmann's supplemental affidavit in this case is similarly adequate. As in *Machado Amadis*, Ms. Brinkmann's affidavit here identifies the content of the withheld documents (draft statements on the validity of Executive Order 13,769), and affirmatively concludes that these documents "would reveal . . . ideas and alternatives" regarding the Executive Order, which were "considered but ultimately rejected in the final agency decision." Brinkmann Decl. (Nov. 5, 2019), ECF No. 30-2, ¶ 76. And like the OIP affidavit in *Machado Amadis*, Ms. Brinkmann's affidavit also specifically connects the disclosure of these drafts to a tangible chilling effect, here amongst high-level DOJ personnel when crafting public statements on agency policy. *See Machado Amadis*, 2020 WL 4914093, at *4 ("[C]hilling of candid advice is exactly what the privilege seeks to prevent."); Brinkmann Decl. (Nov. 5, 2019), ECF No. 30-2, ¶ 77. Moreover, Ms. Brinkmann's affidavit in this case is arguably *more particularized* than the OIP affidavit in *Machado Amadis*, as it emphasizes the unique threat posed by the disclosure of drafts pertaining to "such a high-profile matter as the defense of Executive Order 13,769." Brinkmann Decl. (Nov. 5, 2019), ECF No. 30-2, ¶ 77. As such, the Court concludes that DOJ has sufficiently connected the disclosure of the withheld documents in this case to a foreseeable harm, as is required by the FOIA Improvement Act, *see* 5 U.S.C. § 552(b)(5), and has therefore justified its deliberative process withholdings under FOIA Exemption 5, *see Machado Amadis*, 2020 WL 4914093, at *3.

### C. The "Government Misconduct" Exception Is Inapplicable

Finally, Judicial Watch asserts that even if FOIA Exemption 5 applies, this Court "should consider whether the 'government-misconduct' exception nonetheless warrants disclosure" of the draft memoranda from Acting Attorney General Yates. Pl.'s Opp'n at 8. Specifically, Judicial Watch contends that these drafts represent "deliberations on [Ms.] Yates' decision to commit insubordination," and therefore constitute acts of misconduct that "do not warrant protection under the deliberative process privilege and should be made public." *Id.* at 9. The Court, however, must disagree.

As this Court previously explained in *Judicial Watch, Inc. v. United States Dep't of State*, 285 F. Supp. 3d 249, 253 (D.D.C. 2018), it is not clear in this circuit whether a government misconduct exception may properly be invoked in a FOIA case. But even assuming such an exception did apply, a plaintiff must meet a high bar to properly invoke it. *See, e.g.*, *Hall & Assocs. v. U.S. Envtl. Prot. Agency*, 14 F. Supp. 3d 1, 9 (D.D.C. 2014) ("While there is little case law to guide the Court on what quantum of evidence must be shown to support the [government misconduct] exception, courts have recognized the need to apply the exception narrowly . . . . "). Indeed, only "extreme government wrongdoing" would be sufficient to trigger the exception. *ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F. Supp. 2d 130, 133 (D.D.C. 2008).

Plaintiff has provided no authority to credibly suggest that Ms. Yates' draft memoranda meet this standard. To the contrary, these documents are "working drafts" of a DOJ policy statement addressing the validity of an executive order, passed between the Acting Attorney General herself and one of her principal aides. Far from an egregious act of government wrongdoing, such internal drafts concerning the legality of government action lie at the very heart of the Attorney General's official role. And the fact that Ms. Yates ultimately *disagreed* with the

President's view on Executive Order 13,769, in and of itself, does not represent foul play, but rather independent judgment. Nor does the President's decision to relieve Ms. Yates of her post after this disagreement suggest malfeasance, as Judicial Watch implies. Instead, it represents the administrative prerogative of a President to remove an executive officer who holds views diverging from his own. *See Humphrey's Ex'r v. United States*, 295 U.S. 602, 632 (1935) (discussing the "the unrestrictable power of the President to remove purely executive officers"). Without more, such a disagreement does not transform Ms. Yates' draft memoranda into "government misconduct," and, consequently, no such exception to the deliberative process privilege is appropriate here. Indeed, as the D.C. Circuit has noted, "[t]he deliberative process privilege would soon be meaningless, if all someone seeking information otherwise protected under the privilege had to establish is that there was disagreement within the governmental entity at some point in the decisionmaking process." *Hinckley v. United States*, 140 F.3d 277, 285 (D.C. Cir. 1998).

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that DOJ has met its burden under the FOIA Improvement Act, and appropriately withheld Documents 5182-1, 5164-1, 5156-1, and 5153-1 under FOIA Exemption 5. *See* 5 U.S.C. § 552(b)(5). Accordingly, the Court **GRANTS** DOJ's Second Motion for Summary Judgment and **DENIES** Judicial Watch's Cross-Motion for Summary Judgment.

An appropriate Order accompanies this Memorandum Opinion.

**Dated**: September 18, 2020

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge